UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| ) ) **DEAN ISABELLA,** ) ) **Plaintiff,** ) ) v. ) ) ) **TOWN OF SEEKONK through its Treasurer CHRISTINE N. DEFONTES; and TOWN OF SEEKONK BOARD OF SELECTMEN through its Chairman, JUSTIN SULLIVAN,** ) ) ) ) ) ) **Defendants.** ) ) ) | Case No. 23-cv-10127-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                     **January 15, 2024**

## I.   Introduction

Plaintiff Dean Isabella ("Isabella") has sued the Town of Seekonk (the "Town"), through its Treasurer, and the Town's Board of Selectmen (the "Board"), through its Chairman, alleging violation of his federal constitutional rights (Counts I, III, IX) and seeking a declaratory judgment that his termination violated the Contracts Clause of the U.S. Constitution, Massachusetts Declaration of Rights and Mass. Gen. L. c. 41 § 97A (Counts II, IV, VIII, X). Isabella also seeks attorneys' fees under 42 U.S.C. § 1988 for his federal constitutional claims (Count V) and asserts claims for breach of contract (Count VI) and of the implied covenant of good faith and fair dealing (Count VII). D. 5. Defendants have moved to dismiss all counts, D. 12, and Isabella has moved for leave to file a second amended complaint, D. 18. For the reasons stated below, the Court

1

ALLOWS Defendants' motion to dismiss in part and DENIES it in part, D. 12, and DENIES Isabella's motion for leave to file a second amended complaint, D. 18.

## II.     Standard of Review

### A.     Failure to State a Claim

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal allegations are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678). On a Rule 12(b)(6) motion, the Court may also consider documents incorporated into the complaint, as well as "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim" and "documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

### B.     Motion to Amend

Fed. R. Civ. P. 15(a) "mandates that leave to amend is to be 'freely given when justice so requires' . . . unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Fed. R. Civ. P.

15(a)(2); and then quoting Resol. Tr. Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)). This "liberal amendment policy . . . does not mean that leave will be granted in all cases." Acosta-Mestre v. Hilton Int'l of P.R., 156 F.3d 49, 51 (1st Cir. 1998) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487, at 611 (2d ed. 1990)). "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009) (alteration in original) (quoting Boston & Me. Corp. v. Hampton, 987 F.2d 855, 868 (1st Cir. 1993).

### III. Factual Background

Except where otherwise noted, the following facts are drawn from Isabella's operative, first amended complaint, D. 5, and accepted as true for the purpose of resolving the motion to dismiss.

On December 2, 2020, the Town hired Isabella as Police Chief for a term of three years pursuant to a written agreement (the "Contract"). Id. ¶¶ 8, 10; D. 5-1. Under the terms of the Contract, which Isabella attached to his complaint, "the Town may, for just cause, discipline the Chief of Police, up to and including termination, and/or terminate its obligations under this contract." D. 5-1 § 8A; see D. 5 ¶¶ 11. The Contract also provided Isabella with various rights as to any discipline imposed, including the right to appeal, the right to a public hearing before the Board and the right to be represented by counsel at such hearing. D. 5-1 § 8B. The Contract further states that "[t]he Chief's exclusive remedy to the Board of Selectmen's disciplinary decision shall be arbitration before an Arbitrator." Id.

On January 5, 2023, Isabella was informed at a meeting with the Town Administrator that he was being placed on administrative leave and that the Board would meet on January 18, 2023 to rescind his appointment as Chief of Police. D. 5 ¶¶ 14-15. The Town Administrator stated that the reason for the termination was that "the Town wished to 'proceed in a different direction.'" Id.

3

¶ 16. On January 10, 2023, Isabella received a written notice from the Town Administrator to the same effect. Id. ¶¶ 17–19; D. 5-2. The notice further indicated that the Board was acting pursuant to the Town Charter, which stated that "[a]ll appointing authorities under this charter shall have the power to rescind appointments made by them . . . provided that the appointee shall first have been served with written notice of such intent of removal, and provided further that the appointee shall have the right to a public hearing on his removal." Id. ¶ 20; D. 5-2 at 2; D. 5-3 Art. 1, § 9.

At the outset of January 18, 2023 hearing, the Board indicated that it was entitled by the Town Charter to terminate Isabella's employment, with or without cause. D. 5 ¶¶ 25–27 (alleging that Board presented no evidence of any misconduct by Isabella and did not discuss whether there was cause for his termination). Isabella testified as to various accomplishments and improvements that occurred under his leadership, D. 5 ¶¶ 28–29, and also his efforts to resolve staffing challenges faced by the police department, which he alleges were rejected by the Town. Id. ¶¶ 30–34. Members of the community made statements in support of Isabella's work as police chief. Id. ¶ 35. The Board voted unanimously to rescind Isabella's employment. Id. ¶ 36.

## IV.   Procedural History

Isabella filed this action on January 19, 2023, D. 1, and subsequently amended his complaint, D. 5. Defendants have now moved to dismiss all counts, D. 12, and Isabella has moved for leave to amend his complaint a second time, D. 18. The Court heard the parties on the pending motions and took the matters under advisement. D. 22.

## V.   Discussion

### A.   Failure to State a Claim

#### 1.   Breach of Contract (Count VI)

To succeed on its breach of contract claim, a plaintiff "must show (1) the existence of a valid contract; (2) that it has performed its obligations under the contract; and (3) a breach of the

contract that causes damages." Lombard Med. Techs., Inc. v. Johannessen, 729 F. Supp. 2d 432, 438 (D. Mass. 2010) (citing Persson v. Scotia Prince Cruises, Ltd., 330 F.3d 28, 34 (1st Cir. 2003)). Here, Isabella alleges that the Town breached the Contract by terminating him without just cause. D. 5 ¶¶ 108-11. Isabella is correct that the plain language of the Contract, which is attached and incorporated into the complaint, D. 5-1, provides that the Town "may, for just cause, discipline [Isabella], up to and including termination." Id. § 8A. Defendants seeks to dismiss the breach of contract claim, arguing that the Town Charter nullifies the just-cause provision in the Contract.

a)     <u>Whether the Town Charter Nullifies the Just-Cause Requirement</u>

Specifically, Defendants contend that the Town Charter, which authorizes the appointing authorities "to rescind appointments made by them" supersedes and nullifies the Contract's provisions regarding discipline. D. 13 at 8, 10 (quoting D. 5-3 Art. 1 § 9). According to Defendants, under Mass. Gen. L. c. 41 § 108O, the Contract "prevail[s] over any conflicting provision of any local personnel by-law, ordinance, rule or regulation" but not over a municipal charter. D. 13 at 8–9 (quoting Mass. Gen. L. c. 41 § 108O). In support of this reading, Defendants assert that the Town has not adopted language in a December 7, 1995 amendment to § 108O, which explicitly provided that "[a]ny provisions of said [police chief's] contract shall prevail over the conflicting provisions of a city or town charter." D. 13 at 22 (Section 2, 1995 Mass. Acts 1037). The amendment provide that this section shall take effect in a town "upon the approval of the board of selectman and upon approval by the majority of the voters" voting in the affirmative on adding this provision. Id. (Section 3, 1995 Mass. Acts 1037-38).

Even if the Town has not adopted the 1995 amendment as to Section 2, this Court does not construe § 108O to allow Defendants to ignore the terms of any police or fire chief contract which requires just cause for termination. Defendants' interpretation of the Town Charter and § 108O would call into question the validity of any employment contract between the Town and a police

or fire chief. See Baltimore Teachers Union, Am. Fed'n of Tchrs. Loc. 340 v. Mayor of Baltimore, 6 F.3d 1012, 1016 n.5 (4th Cir. 1993)). The plain language of § 108O, as in effect even without Section 2, provides that a town contract "shall prevail over any conflicting provision of any personnel by-law, ordinance, rule or regulation." Mass. Gen. L. c. 41 § 108O. It also provides, even without Section 2, that "[i]n the absence of any conflicting provisions in an employment contract, nothing contained in this section [of the statute] shall affect the removal powers of any city or town over its police chief." It is not clear from the pleadings (or the documents attached and incorporated by reference therein), that the Town Charter actually conflicts with the Contract. The Town Charter simply provides that the Board, the appointing authority, is also the entity with authority to rescind its appointments and must provide its appointees with written notice and a public hearing prior to any such rescission. D. 5-3 Art. 1 § 9. This generally accords with the procedural protections granted by the Contract. See D. 5-1 § 8B. Nothing in the Charter reserves to the appointing authority the ability to rescind appointment without cause, notwithstanding any contractual obligations. See D. 5-3 Art. 1 § 9.

Defendants cite no cases applying § 108O to nullify the terms of an employment contract based on language in a town charter. D. 13 at 10 (citing cases). Instead, the cases cited by Defendants involve whether local government entities can exercise power not vested in them by their local charter. See O'Connell v. Mayor of Lynn, 54 Mass. App. Ct. 583, 586 (2002) (rejecting an employee's attempt to invoke the protections of the city charter where employee was "appointed" by mayor but did not go through confirmation proceedings required by the charter); Town Council of Agawam v. Town Manager of Agawam, 20 Mass. App. Ct. 100, 105 (1985) (rejecting town council's attempt to vote itself the power to confirm appointees despite a charter that "explicit[ly] and exclusive[ly]" vested the power of appointment in the town manager "and by

6

clear implication denies to the town council the right of confirmation"). In Adalian, the Supreme Judicial Court warned that "[p]ersons dealing with a municipality must take notice of limitations of this kind upon the contracting power of the municipality . . . and cannot recover upon contracts attempted to be made in violation of them." Adalian Bros. v. City of Bos., 323 Mass. 629, 631 (1949). The Town Charter provision in this case, D. 5-3 Art. 1 § 9, however, is distinguishable from the provision in Adalian, which provided that "[n]o official of said city . . . shall . . . involve the city in any contract for the future payment of money in excess of the appropriations duly made in accordance with law." Id. at 630–31 (holding that attempted sales contract could not be enforced). Here, the Town Charter does not expressly limit Defendants' ability to enter contracts; it simply provides that the governing body that appoints an official is also the body that may remove appointed officials. D. 5-3 Art. 1 § 9; see Baltimore Tchrs. Union, 6 F.3d at 1016 (holding that provision which authorized Board of Estimates to "effect 'reductions . . . in appropriations'" did not "necessarily subsume the power to modify contracts" or "clearly evidence an intention to authorize such modifications").

Accordingly, the Court concludes that the Town Charter does not override the Contract's just-cause provision and dismissal of the breach of contract claim is not warranted on this basis.

b)      Whether the Arbitration Clause Applies

Alternatively, Defendants argue that "where [Isabella] contends that the Town lacked 'just cause' to rescind his appointment/terminate his employment, the express and unambiguous language of the contract requires him to pursue arbitration as his remedy." D. 13 at 14-15; D. 5-1 §8(B).

The Federal Arbitration Act ("FAA") "reflects Congress's intent to create a 'liberal federal policy favoring arbitration.'" Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 173

7

(1st Cir. 2021) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011)).[1]  A party seeking to compel arbitration must demonstrate (1) "that a valid agreement to arbitrate exists," (2) "that the movant is entitled to invoke the arbitration clause," (3) "that the other party is bound by that clause," and (4) "that the claim asserted comes within the clause's scope."  McKenzie v. Brannan, 19 F.4th 8, 15 (1st Cir. 2021) (internal citation omitted).  "Whether or not the parties have agreed to submit a certain dispute to arbitration 'depends on contract interpretation, which is a question of law.'"  Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir. 2011) (quoting Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008)).  As a result, this Court is "mindful that all doubts are resolved in favor of arbitration; arbitration will be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 450 (1st Cir. 2010) (internal quotation marks and citation omitted).

      Here, the Court concludes that the Contract governs Isabella's termination and the Contract contains an arbitration clause that is binding on both parties and may be invoked by Defendants. D. 5-1 §8(B).  The Contract provides that the "Chief's exclusive remedy to the Board of Selectmen's disciplinary decision shall be arbitration before an Arbitrator."  Id.  That Arbitrator "shall have the authority to determine whether the Town had just cause to take the disputed action and the Arbitrator may reverse or modify the action taken."  Id.  Isabella's claim for breach of contract falls within the scope of the arbitration clause of Arbitrator, which expressly authorizes the arbitrator to determine whether Isabella was terminated for just cause.  See D. 5 ¶¶ 110 (alleging breach of contract based on failure to terminate for just cause).

---

[1] Neither party suggests that the FAA does not apply here.  See Cir. City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001) (interpreting § 1 of FAA to exclude only employment contracts of "transportation workers" from FAA coverage and otherwise include employment contracts).

Accordingly, the Court grants the motion to dismiss the breach of contract claim (Count VI) in favor of arbitration.

        2.     *Breach of the Implied Covenant of Good Faith and Fair Dealing (Count VII)*

The implied covenant of good faith and fair dealing implicit in every contract "requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract." T.W. Nickerson, Inc. v. Fleet Nat. Bank, 456 Mass. 562, 570 (2010) (internal quotation marks and citation omitted). "In other words, the parties to a contract implicitly agree 'to deal honestly and in good faith in both the performance and enforcement of the terms of their contract." Clinical Tech., Inc. v. Covidien Sales, LLC, 192 F. Supp. 3d 223, 237 (D. Mass. 2016) (internal quotation marks and citations omitted), aff'd, 772 F.3d 925 (1st Cir. 2014). Isabella relies upon the same allegations as to this claim as to his breach of contract claim, and its outcome similarly turns on whether the Board's disciplinary decision was based on a finding of just cause for Isabella's termination. D. 5 ¶ 115; D. 17 at 17. As such, the Court concludes that Isabella's claim for breach of the implied covenant of good faith and fair dealing falls within the scope of the arbitration clause.

Accordingly, the Court grants the motion to dismiss as to breach of the implied covenant of good faith and fair dealing (Count VII) in favor of arbitration.

        3.     *Declaratory Judgment Claim as to Mass. Gen. L. c. 41 § 97A (Count VIII)*

In Count VIII, Isabella seeks a declaratory judgment that Defendants have violated his rights under Mass. Gen. L. c. 41 § 97A. This statute provides that a town's "selectmen may remove [the police] chief or other officers for cause at any time after a hearing." Id. Although this is not a contractual claim, the Contract provides for arbitration as remedy to the Board's "disciplinary "decision," not merely to contractual matters. Resolution of this claim for declaratory judgment

9

will require the decisionmaker to assess whether Isabella was fired for cause, a determination the arbitrator is explicitly authorized to make. D. 5-1 § 8B; see Williams v. HealthAlliance Hosps., Inc., 158 F. Supp. 2d 156, 160–61 (D. Mass. 2001) (concluding that that mandatory arbitration of an employer's "decision" to deny insurance benefits encompassed ERISA and federal common law claims because such claims were challenge to the denial decision and would not have been asserted but for that decision). Accordingly, the Court grants the motion to dismiss the § 97A claims (Count VIII) in favor of arbitration.

    *4. Contract Clause Claim (Count I) and Declaratory Judgment Claim as to the Contract Clause of the U.S. Constitution (Count II)*

Isabella also asserts a Contract Clause claim and seeks a declaratory judgment that the Town Charter provision allowing the Board to rescind "appointments" is unconstitutional under the Contract Clause of the U.S. Constitution as applied. D. 5 ¶¶ 70-78; D. 17 at 3–8. Article I, § 10 of the Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. Art. 1 § 10. Defendants argue that "the Contract Clause is not implicated in this dispute" because the Isabella's Contract "was not a preexisting contract at the time of enactment of the Town Charter." D. 13 at 5–6.

The Contract Clause is "not directed against all impairments of contract obligations, but only against such as results from a *subsequent* exertion of legislative power of the State." Arriaga v. Members of Bd. of Regents, 825 F. Supp. 1, 4 (D. Mass. 1992) (emphasis added and internal citation omitted); see Sveen v. Melin, 584 U.S. __, 138 S. Ct. 1815, 1821–22 (2018) (explaining that even as to pre-existing contracts, "not all laws affecting [same] violate the [Contract] Clause" and reiterating the two-step test regarding same). "Contracts made after the law was in force, of course, are made subject to it, and impose only such obligations . . . as the law permits." Abilene Nat. Bank v. Dolley, 228 U.S. 1, 5 (1913); see, e.g., Munday v. Wisconsin Tr. Co., 252 U.S. 499,

10

503 (1920) (affirming judgment against plaintiff on Contract Clause claim and explaining that "the settled doctrine is that the contract clause applies only to legislation subsequent in time to the contract alleged to have been impaired"); Quinn v. Rent Control Bd. of Peabody, 45 Mass. App. Ct. 357, 372 (1998) (holding that Contract Clause did not apply contracts formed after the passage of 1987 rent control legislation). Here, the Contract was executed on November 18, 2020 (effective December 2, 2020), D. 5-1 at 2, after the Town Charter was adopted in 1995 and amended in 2018, D. 5-3 at 2. Isabella cannot state a Contract Clause claim because the Town Charter predated his Contract.

Isabella cites Baltimore Tchrs. Union for the proposition that an as-applied Contract Clause claim can target a pre-existing state law. D. 17 at 4–5 (Baltimore Tchrs. Union, 6 F.3d at 1016). In Baltimore, plaintiffs attacked a furlough plan reducing employee salaries which was adopted after plaintiffs had entered employment contracts with the City. Baltimore Tchrs. Union, 6 F.3d at 1014–1016. The pre-existing city charter was not the state law targeted by the Contract Clause challenge, but rather a basis on which defendants argued unsuccessfully they had always retained the power to modify employee salaries. Id.

Isabella further argues that the Town Charter is a legislative barrier to recovery for breach of contract. D. 17 at 7. The cases address whether a state law substantially impaired a pre-existing contractual obligation, but do not address the fundamental flaw with Isabella's Contract Clause claim: that the contract at issue was entered into after the challenged state law was enacted. See e.g., Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248, 1249–52 (7th Cir. 1996) (analyzing challenge to 1998 ordinance which repealed city's 1988 approval of sale of condemned property to plaintiff and concluding that no impairment of contract occurred); Single Source, Inc. v. Cent. Reg'l Tourism Dist., Inc., No. CIV.A. 08-40176-FDS, 2011 WL 1877700, at *2, 3, 14 (D. Mass.

11

May 17, 2011) (stating that relevant contracts were executed by 2001 and challenged statute was subsequently enacted in 2004).

Accordingly, the Court dismisses the Contract Clause claim (Count I), as well as the associated declaratory judgment count (Count II).

### 5. *Claim for Violation of Procedural Due Process (Count III) and Declaratory Judgment Regarding Procedural Due Process (Count IV)*

In Count III, Isabella alleges Defendants violated his procedural due process rights under the Fourteenth Amendment and, in Count IV, seeks a declaratory judgment that Defendants violated his procedural due process rights under the Massachusetts Declaration of Rights by failing to provide him a pre-deprivation notice of the charges and evidence against him and conducting a sham hearing on January 18, 2023. D. 5 ¶¶ 79-91, 92-104; D. 17 at 13. "[T]o establish a procedural due process claim under section 1983, a plaintiff 'must allege first that [he] has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived [him] of that property interest without constitutionally adequate process.'" Marrero–Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007) (internal citation and quotation marks omitted).[2] At this stage, Defendants do not dispute that Isabella had a property interest in his employment. D. 13 at 8.

'The fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner.'" Christensen, 360 F. Supp. 2d at 222 (quoting Matter of Kenney, 399 Mass. 431, 435 (1987)). Where the plaintiff has a protected property interest in continued employment, the plaintiff is entitled to a pretermination hearing, including "oral or

---

[2] "[A]s a general proposition, the federal and Massachusetts standards for a procedural due process analysis are identical." Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 215 n.1 (D. Mass. 2005) (citing Liability Investigative Fund Effort, Inc. v. Mass. Med. Prof. Ins. Assn., 418 Mass. 436, 443 (1994)).

written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); see Chmielinski v. Massachusetts, 513 F.3d 309, 316 (1st Cir. 2008).

Here, the complaint itself shows that Isabella received a pretermination hearing before the Board at which he was represented by counsel and presented arguments in favor of his continued employment. D. 5 ¶¶ 24–34. Isabella, nevertheless, has adequately pled that he did not receive adequate notice of the charges against him prior to the hearing or an explanation of the Town's evidence against him. At most, Isabella was informed that the Town wished to go "in a different direction." Id. ¶¶ 16, 97; see Cotnoir v. Univ. of Maine Sys., 35 F.3d 6, 12 (1st Cir. 1994) (affirming denial of summary judgment for defendant where plaintiff did not receive report from the investigation into his alleged misconduct and thus "had no way to know what the extent of the evidence was, what his alleged role in the whole scheme was, and the seriousness with which the [employer] viewed the incident"); Melville v. Town of Adams, 9 F. Supp. 3d 77, 107 (D. Mass. 2014) (denying motion to dismiss due process claim where plaintiff was notified of emergency hearing two hours beforehand and "notice included no information regarding the substance of the allegations leveled against her"). Indeed, in both the January 18 hearing and January 10 notice, Defendants communicated their belief that they did not need cause to rescind Isabella's employment. D. 5 ¶¶ 25, 43; D. 5-2 at 2. While the chairman indicated at the beginning of the hearing that the Board was concerned about the police department's staffing and wanted a leader who better understood the community and police department's brand, none of the chairman's comments indicated why misconduct, incompetence or any other flaw on Isabella's part would create such concerns. Cf. Chmielinski, 513 F.3d at 312 (noting that plaintiff did not contest adequacy of notice where he was informed about the allegations of misconduct that had been

13

leveled against him nine months prior, and had received details of those allegations four months prior to termination hearing). Even assuming *arguendo* that Isabella could have ascertained the nature of the charges against him from the chairman's comments at the beginning of the hearing, the timing of same would not have provided him sufficient opportunity to respond. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978) (explaining that "purpose of notice . . . is to apprise the affected individual of, and permit adequate preparation for, an impending hearing"); Collins v. Marina-Martinez, 894 F.2d 474, 480 (1st Cir. 1990) (concluding that due process was not provided where plaintiff did not know prior to interview that "his tenure was being questioned" and "[n]o specification of charges was furnished").

Moreover, Isabella pleads factual allegations which permit the plausible inference that the outcome of the hearing was predetermined. D. 5 ¶¶ 25–26, 36–37 (alleging that Board presented no allegations or evidence that Isabella engaged in wrongdoing and engaged in no deliberations or discussion before voting). Allegations that the outcome of the hearing was predetermined may be sufficient to survive a motion to dismiss. Murphy v. Massachusetts - Exec. Off. of Trial Ct., 335 F. Supp. 3d 137, 148 (D. Mass. 2018) (denying motion to dismiss where plaintiff "has made adequate factual allegations that his termination was pre-ordained"); Bliss v. Sanguinet, No. CIV.A. 12-10123-RWZ, 2013 WL 3334728, at *4 (D. Mass. June 24, 2013) (same). At a later stage, Defendants may well show that there is insufficient evidence to support Isabella's allegations in this regard. See Eaton v. Town of Townsend, No. 22-1334, 2023 WL 3317986, at *8–11 (1st Cir. May 9, 2023) (affirming summary judgment for defendant where plaintiff adduced no evidence that the Board members "had decided in advance of the pre-termination hearing that nothing [they] heard there would have changed [their] mind[s]" (alteration in original) (quoting West v. Hoover, 681 F. App'x 13, 17 (1st Cir. 2017))); Lawless v. Town of Freetown, 63 F.4th

61, 67-68 (1st Cir. 2023) (concluding, upon review of summary judgment, that where "all of the essential requirements of predeprivation process" were met and where the "evidence of bias" plaintiff alleged was merely that employer who had instituted termination proceedings also presided over the hearing, qualified immunity shields defendants). For the purposes of a Rule 12(b)(6) motion, however, Isabella's allegations, taken as a whole, plausibly plead failure to provide sufficient pre-deprivation process.

Defendants object that "the existence of [a] post deprivation process vitiates any constitutional violation." D. 13 at 12 (quoting Burns v. Town of Lamoine, 43 F. Supp. 2d 63, 69 n.10 (D. Me. 1999)). Here, the asserted post-deprivation process is arbitration or a state law breach of contract claim. Id. Defendants' argument seems to ignore the First Circuit's "long history of case law . . . holding that public employees who have been deprived of a property interest in employment without due process may bring a § 1983 claim in federal court regardless of the availability of a state law breach-of-contract claim." Clukey v. Town of Camden, 717 F.3d 52, 61 (1st Cir. 2013) (citing cases). Although the availability of a breach of contract claim may foreclose a private party's argument that it was deprived of due process in a dispute over compensation for work the private party performed for the government, id. at 60–61 (analyzing Ramírez v. Arlequín, 447 F.3d 19, 25 (1st Cir. 2006)), given Isabella's property rights at issue, "the right 'to pursue a gainful occupation . . . cannot be fully protected by an ordinary breach-of-contract suit.'" Id. at 61 (quoting Concepción Chaparro v. Ruiz–Hernández, 607 F.3d 261, 267 n.2 (1st Cir. 2010)). Here, Isabella has plausibly pled that Defendants failed to provide him with adequate pre-hearing notice. See Clukey, 717 F.3d at 60–61 (citing cases).

The Court also rejects Defendants' argument that because the Contract "expressly states the process due [to] the Plaintiff" and "nothing more should be inferred or 'read into' the contract."

D. 13 at 11. The only case Defendants cite in support of this position, however, merely states basic principles of contract interpretation under Illinois law. See John Hancock Life Ins. Co. v. Abbott Lab'ys, 863 F.3d 23, 37 (1st Cir. 2017). Defendants identify no cases supporting the proposition that amount of process due to a plaintiff is determined by the terms of the parties' contracts. "The mere fact that [an employment contract] contains a hearing procedure . . . does not mean that constitutional due process minimums are satisfied." Clukey, 717 F.3d at 61–62; Cotnoir, 35 F.3d at 12 (concluding that "availability of post-termination grievance procedures will not ordinarily cure the [due process] violation"); see Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 319 (2d Cir. 2002) (explaining that Constitution, and not a collective bargaining agreement, determines what process is due).

To the extent that Defendants that Isabella's procedural due process claim should be arbitrated, see D. 13 at 13 n.5, the arbitration clause neither expressly encompasses nor exempts Isabella's constitutional claims. The First Circuit has not yet ruled on "whether a contractual agreement to arbitrate § 1983 claims would be enforceable." See Massó-Torrellas, 845 F.3d at 465–66 n.2 (alteration in original). At least one district court in this Circuit held that it would not compel arbitration of a dispute over First Amendment rights, even if FAA's policy favoring arbitration were applicable. Cirelli v. Town of Johnston Sch. Dist., 888 F. Supp. 13, 15 (D.R.I. 1995). Cirelli, however, was decided without the benefit of more recent Supreme Court opinions. See 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 265 (2009) (disclaiming "broad dicta that were highly critical of the use of arbitration for the vindication of statutory antidiscrimination rights" as "rest[ing] on a misconceived view of arbitration that this Court has since abandoned"); Brophy v. Ament, No. CV 07-0751 JB/KBM, 2008 WL 11363888, at *16 n.3 (D.N.M. July 9, 2008) (ordering arbitration of federal statutory claims, including under § 1983, where plaintiff failed to

meet burden "to show that Congress intended to preclude a waiver of a judicial forum for [particular statutory] claims (alteration in original) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991))).

Although arbitration of constitutional claims may not be barred as a matter of law, the Court concludes that the arbitration clause in the present case is not so broad as to waive Isabella's right to a judicial forum for his procedural due process claim. Here, the arbitration clause is focused on "the Board of Selectmen's disciplinary decision" and authorizes the arbitrator "to determine whether the Town had just cause to take the disputed action" and "reverse or modify the action taken." D. 5-1 § 8B. It does not authorize the arbitrator to assess the constitutional adequacy of pre-termination notice, rather than the justification for the disciplinary decision itself. Under these circumstances, the Court concludes that the arbitration clause does not encompass Defendants' procedural due process claims. See Massó-Torrellas, 845 F.3d at 465–66 (concluding that § 1983 claims fell outside the scope of an arbitration clause encompassing "matter[s] related to this contract"); Cummings v. City of Newton, 164 F. Supp. 3d 227, 231–32 (D. Mass. 2016) (concluding that due process claims did not fall within arbitration clause covering disputes over "termination of the Chief of Police's employment" because basis for due process claims was not "dispute that led to [plaintiff's] termination", but rather the status of his "property right following his exoneration").

Accordingly, the Court denies the motion to dismiss Isabella's procedural due process claims (Counts III and IV).

      6.    *Takings Clause Claims (Counts IX and X)*

"The Takings Clause of the Fifth Amendment, made applicable to the [s]tates through the Fourteenth [Amendment], . . . provides that private property shall not 'be taken for public use

17

without just compensation.'" Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536 (2005).[3] Isabella claims a property interest in his continued employment, which he asserts was taken without just compensation. D. 5 ¶¶ 121–24. Defendants argues that courts have rejected such claims based on such a property interest and that Isabella's taking claim is merely a repackaged breach of contract claim. D. 13 at 19.

Typically, when plaintiff is party to a contract with the government and "when the government itself breaches a contract, [the plaintiff] must seek compensation from the government in contract rather than under a takings claim." Piszel v. United States, 833 F.3d 1366, 1376 (Fed. Cir. 2016) (affirming dismissal of takings claim). Here, the Court has already concluded that the Town Charter did not supersede the Contract and Isabella retains his contractual remedy for the Defendants' breach. Piszel, 833 F.3d at 1377 (noting in its analysis that government action did not "remove[] [plaintiff's] ability to pursue a breach of contract remedy against his employer"). In such circumstances, Isabella should pursue his contractual remedies (which require arbitration, as noted above) in lieu of a takings claim.

Accordingly, the Court dismisses the takings claims (Counts IX and X).

    7.    *Attorneys' Fees (Count V)*

The parties agree that Isabella's claim for attorneys' fees rises and falls with his constitutional claims under § 1983. D. 13 at 14; D. 17 at 14. As the Court has not dismissed Isabella's procedural due process claim arising under the U.S. Constitution, the Court denies the

---

[3] Isabella asserts takings claims under the Fifth Amendment and Fourteenth Amendments and the Massachusetts Declaration of Rights. D. 5 ¶¶ 121–136. The Court construes a takings clause claim under Article 10 to be coextensive with the Fifth Amendment and neither party has suggested otherwise. See Blair v. Dep't of Conservation & Recreation, 457 Mass. 634, 642 (2010) (noting that Massachusetts courts have "interpreted art. 10 consistently to provide property owners the same protection afforded under the just compensation clause of the Fifth Amendment").

motion to dismiss as to the claim for attorneys' fees as to this remaining constitutional claim (Count V).

### B. Motion to Amend

Isabella has moved for leave to amend his complaint to add several allegations regarding the availability of state law remedies and arbitration. D. 18 at 1; 18-1 ¶¶ 61–68. These allegations are ultimately legal arguments such as "Isabella has no available and constitutionally adequate remedies at State law" and "[b]ecause the Town's action did not constitute disciplinary action . . . Isabella cannot appeal that decision to an arbitrator under Section 8B of the Contract." Id. ¶¶ 61, 67; see D. 19 at 3 (stating that "the eight (8) additional paragraphs clarify the following legal argument(s)"). The Court has already rejected Defendants' argument that Isabella's procedural due process claim must go to arbitration and that the Town Charter trumps the Contract and, therefore, the Court need not reach Isabella's further legal arguments or allow amendment to the complaint regarding the same arguments. To the extent that Isabella contends that Defendants' conduct constituted a rescission of his appointment and not a termination subject to arbitration under the Contract, D. 17 at 6-7, 11, the Court rejects that argument based upon the well pled allegations in the operative complaint and the plain language of the Contract and, therefore, any proposed amendments as to this issue would be futile. To the extent that Isabella asserts that the absence of an available remedy is the basis for his Contract Clause claim or due process claim, such arguments were made in Isabella's opposition to the motion to dismiss and considered by the Court in its rulings above.

Given that the proposed second amended complaint adds no factual allegations that would alter this Court's dismissal of certain claims, the motion to amend is denied as futile. See Murray v. Wal-Mart Stores, Inc., No. 2:15-cv-00484-DBH, 2018 WL 6438549, at *5–6 (D. Me. Dec. 4, 2018) (denying motion to amend where proposed revisions "merely add needless detail to already

adequately pleaded claims" and "needlessly incorporates a portion of his brief"); Fed. Deposit Ins. Corp. v. Kachkar, No. 07-cv-1606 (ADC), 2013 WL 12234000, at *4 n.8 (D.P.R. Sept. 5, 2013) (denying motion for leave to amend complaint where many amendments "are actually legal arguments as to how the facts alleged have made out a claim").

## VI. Conclusion

For the foregoing reasons, the Court DENIES the motion to dismiss, D. 12, as to the procedural due process claims (Counts III and IV) and associated claim for attorneys' fees as to the federal, procedural due process claim (Count V), but ALLOWS the motion to dismiss as to all other claims. The Court DENIES Isabella's motion to amend, D. 18.

**So Ordered.**

/s Denise J. Casper
United States District Judge